Glenn D. Bellamy (OH Bar 0070321)
Wood Herron & Evans, LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: 513-707-0243
Email: gbellamy@whe-law.com
For Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **RARE BREED TRIGGERS, Inc., a Texas corporation,** ) | CASE NO. _____ |
| ) | |
| **and** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **ABC IP, LLC, a Delaware limited liability company,** ) | **COMPLAINT FOR PATENT INFRINGEMENT AND** |
| ) | **FALSE PATENT MARKING** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **Firearm Systems LLC d/b/a Firearm Systems, an Arizona limited liability company,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **Brandon Donatto, an individual,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **Michael Stakes, an individual,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **John Doe, an entity of unknown type,** ) | |
| ) | |
| **Defendants.** ) | |

     This is an action for patent infringement and false patent marking in which Rare Breed

Triggers, Inc. ("Rare Breed") and ABC IP LLC ("ABC") (collectively, "Plaintiffs") accuse

Firearm Systems, LLC d/b/a Firearm Systems ("Firearm Systems"), Brandon Donatto, Michael

Stakes, and John Doe (collectively, "Defendants"), of infringing U.S. Patent No. 10,514,223

("the '223 Patent"); U.S. Patent No. 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336

Patent"), and 12,274,807 ("the '807 Patent) (collectively, "the Asserted Patents") and marking

products with a false patent number for the purpose of deceiving the public, as follows:

<u>**PARTIES**</u>

1.      Rare Breed is a corporation organized under the laws of the State of Texas with

an address at 2710 Central Fwy, Suite. 150-151, Wichita Falls, TX 76306.

2.      ABC is a limited liability company organized under the laws of the State of

Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

3.      Upon information and belief, Firearm Systems is a limited liability company

existing under the laws of the state of Arizona and has a place of business at 4742 N. 24th Street,

Suite 300, Phoenix, AZ 85016.

4.      Upon information and belief, Brandon Donatto is an individual residing in

Arizona, who is an owner and directs the operations of Firearm Systems, LLC.

5.      Upon information and belief, defendant John Doe, the identity of which will be

determined in discovery, is the business of Partisan Triggers, manufacturer of products that

infringe the Asserted Patents, whether a sole proprietorship, partnership, corporation, or limited

liability company, that is believed to have a business location in Arizona.

6.      Upon information and belief, Michael Stakes is an individual residing in Arizona,

who directs the operations of Partisan Triggers and is an owner of U.S. Patent No. 9,146,067.

## JURISDICTION AND VENUE

7.     This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, and 284-85.

8.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

9.     Personal jurisdiction and venue over Defendants are proper in this District because all Defendants reside in and/or have a place of business this district.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1400. Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

11.      This lawsuit asserts direct infringement of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent ("the Asserted Patents"). True copies of the '223 Patent, the '003 Patent, the '336 Patent, and the '807 Patent are attached hereto as Exhibits A, B, C, and D, respectively.

12.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019.

13.     The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023.

14.     The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024.

15.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025.

16.     ABC is the owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

17.     Rare Breed is the exclusive licensee of the Asserted Patents.

18.     Upon information and belief, Defendants have committed acts of direct patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## The Inventions

19.     By way of background, a typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

20.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when

the user allows the trigger to reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages with the hammer before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

21.     In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member in a locked state until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

22.     The '223 Patent describes and claims a device in which the cycling of the action displaces the hammer which causes the trigger member to forcefully reset the trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

23.     The '003 Patent, the '336 Patent, and the '807 Patent describe and claim a similarly operating device with the additional feature that allows it to be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

24.     The claims of the patents define the scope of the patented invention(s).

## The Infringment

25.     On information and belief, Defendants are currently making, using, selling, offering for sale, and/or importing a forced reset trigger assembly, which includes a three-

position safety selector, known as the "Partisan Disruptor" ("the Infringing Device"), which embodies the technology claimed in the Asserted Patents.

26.     On information and belief, Defendants Firearm Systems and Brandon Donatto sold, sell. offer for sale, and/or offered for sale the Infringing Device via the website https://firearmsystems.net/shop.  The Infringing Device is offered in the housing color choice of either Green or Black. Exemplary photographs of the Infringing Device (in Green) are shown below:

 

27.     On information and belief, Defendants John Doe (Partisan Triggers) and Michael Stakes promote the sale of the Infringing Device via the website: https://partisantriggers.com/, which includes hyperlink buttons "Where To Find" and   "Where can I buy one?," as well as direct hyperlinks to websites for "Available Now" sellers (including Firearm Systems) and "Coming Soon" sellers, as reproduced below.



28.     The Infringing Device also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic modes by moving the safety selector between positions.

29.     When the Infringing Device operates in the forced reset mode, the cycling of the action causes hammer contact with the trigger member to forcefully reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position according to the invention described and claimed in the '223 Patent. The presence of another mode of operation in the Infringing Device does not affect the infringement analysis as to the '223 Patent claims.

30.     As claimed in the '003 Patent, the '336 Patent, and the '807 Patent, the Infringing Device has the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

31.     When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the

hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

32.     When in the forced reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

33.     On information and belief, Stakes is an owner of Partisan Triggers. On information and belief, Stakes is an owner of U.S. Patent No. 9,146,067, which relates to an assisted reset trigger made and sold by Tac-Con. On information and belief, Stakes is an owner of Tac-Con, whose rate-of-fire enhancing products precede Plaintiffs' creation of the FRT market. The Partisan Triggers website states at https://partisantriggers.com/team-partisan/:

**Michael Stakes - Group Engineer**

Michael founded Tactical Fire Control (TacCon) with the mission of engineering excellence, unparalleled product performance and earning the loyalty of every customer. The company specialized in precision firearm triggers for shooters who demand consistency, safety, and exceptional feel.

Drawing on deep industry experience and a hands-on approach to product development, Michael oversaw every stage of the manufacturing process—from conceptual design and materials selection to machining tolerances, quality control, and end-user testing. His focus has always been on combining innovative engineering with rugged durability to produce triggers that enhance accuracy and elevate the shooting experience. Mission Accomplished then and mission accepted now to take precision triggers to a whole new level in partnership with Partisan Triggers. Michael looks forward to many years of collaboration, innovation and serving many, many more customers.

34.     On information and belief, Stakes and Firearm Systems are alter egos and have intermingled funds.

35.     Partisan Triggers' website includes a page titled "FRT Legal Library" at https://partisantriggers.com/library/. This web page links to copies of several documents, including the '223 Patent, the '003 Patent, and the '336 Patent, showing that Partisan Triggers

and its principals are aware Plaintiffs' patent rights and that they are relevant to the product it is making, using, selling, offering for sale, and/or importing. This provides notice of Plaintiffs' patent rights to reseller customers of the Partisan Disruptor, including Firearm Systems.

36.     In view of the Defendants' knowledge of the Plaintiffs' patent rights as evidenced by the "Legal Library" on Partisan Triggers' website, the infringement is willful.

37.     On information and belief, Stakes is and/or has been and is working in concert with Douglas Rios ("Rios") on the development, manufacture, and/or import of the Infringing Device.

38.     Rios is a named party in prior litigation relating to the '223 Patent, i.e., *Rare Breed Triggers, LLC, et al. v. Big Daddy Enterprises, Inc., et al.*, Case No. 1:21-cv-149, N.D Florida ("Prior Litigation"). In that prior litigation, Rios is a party expressly bound by a permanent injunction entered October 19, 2022. That injunction provides:

> The issues of infringement, validity, and enforceability are hereby finally concluded and disposed of and this CONSENT JUDGMENT AND PERMANENT INJUNCTION bars each and any of the Defendants from contending in this action or any other proceeding that the claims of the '223 Patent are invalid, unenforceable or not infringed.

39.     Pursuant to Federal Rule of Civil Procedure 65, an injunction binds persons who receive actual notice of the injunction by personal service or otherwise, to include the parties and *other persons who are in active concert or participation with any of them.*

40.     Rios is a named Defendant who was represented by counsel in the Prior Litigation and is, thus is presumed to have received actual notice of the injunction.

41.     Existence of the injunction was well known among those who manufacture rate enhancing devices for firearms, including assisted reset and forced reset triggers, including Tac-Con, maker of the 3MR assisted rest trigger, and its principal, Stakes.

42.     On information and belief, Rios gave actual notice of the injunction for the Prior Litigation to Stakes. In any event, Stakes has actual notice of the injunction no later than the service of this Complaint. Because Stakes is acting in active concert or participation with Rios with respect to the Infringing Device, he is bound by the injunction's terms.

### False Patent Marking

43.     On information and belief, Stakes the inventor and is an owner of U.S. Patent No. 9,146,067, which relates to a three-position assisted reset trigger made and sold by Tac-Con. On information and belief, Stakes is an owner of Tac-Con, whose rate-of-fire enhancing products precede Plaintiffs' creation of the market for forced reset triggers.

44.     The claims of U.S, Patent No. 9,146,067 do not cover a forced reset trigger.

45.     On information and belief, Stakes and Defendant John Doe (Partisan Triggers) know that the Partisan Triggers "Disruptor" is a forced reset trigger and that the claims of U.S, Patent No. 9,146,067 do not cover that product.

46.     Defendants Stakes and John Doe (Partisan Triggers) falsely promote the Disruptor as not being a forced reset trigger. The Partisan Triggers website sates at https://partisantriggers.com/the-disruptor/: "The Disruptor (US Patent 9146067) is an assisted reset trigger descended from the original TacCon 3MR trigger . . .." and presents the banner reproduced below, falsely asserting that it is an "assisted reset trigger" and that it is covered by claims of U.S, Patent No. 9,146,067.



47.     This assertion is false, is for the purpose of deceiving the public, causes competitive injury to Plaintiffs, and is in violation of 35 U.S.C. § 292.

48.     Firearm Systems describes the Disruptor on its website at https://firearmsystems.net/ (image below), stating: "Our extensive selection includes the Partisan Triggers line, featuring *The Disruptor*, a forced reset trigger (FRT) . . .." "Experience superior performance with Partisan Triggers, including The Disruptor, our premium forced reset trigger system." And "Firearm Systems is proud to feature The Disruptor, a top-tier forced reset trigger from Partisan Triggers."

### Partisan Triggers For Sale!!

## The Disruptor Trigger System

At Firearm Systems, we offer cutting-edge firearm components and accessories that enhance the performance, reliability, and precision of your firearm setup. Our extensive selection includes the **Partisan Triggers** line, featuring *The Disruptor*, a **forced reset trigger** (FRT) that delivers unmatched responsiveness and consistent performance. Trusted by shooting enthusiasts and professionals nationwide, we pride ourselves on offering advanced, legal, and compliant trigger systems that meet the high demands of competitive shooters and tactical applications.

## Innovative Trigger Technology – Featuring Partisan Triggers

Experience superior performance with **Partisan Triggers**, including *The Disruptor*, our premium forced reset trigger system. Known for its precision engineering, **The Disruptor** offers an exceptional reset mechanism that enhances shooting accuracy and speed, providing a competitive edge for serious shooters. As part of our advanced firearm technology offerings, **Partisan Triggers** ensures both performance and safety, making it the perfect choice for professionals and enthusiasts alike.

## Premium Forced Reset Triggers – The Disruptor by Partisan Triggers

Firearm Systems is proud to feature **The Disruptor**, a top-tier **forced reset trigger** from **Partisan Triggers**. Designed to meet the needs of tactical professionals and competitive shooters, **The Disruptor** provides a robust, legal solution for enhancing your firearm's rate of fire and overall precision. Whether you're looking to improve your shooting performance or require a high-quality FRT for your AR-15, **The Disruptor** by Partisan Triggers offers reliability and consistency you can count on.

**COUNT I – DIRECT INFRINGEMENT OF THE '223 PATENT**

49.    The allegations set forth in paragraphs 1-48 are fully incorporated into this First

Count for Relief.

50.    Upon information and belief, Defendants have and continue to willfully directly

infringe at least Claim 4 of the '223 Patent by making, using, selling, offering for sale, and/or

importing without authority within the United States, the Infringing Device.

51.    Because the claims describe the invention as "comprising" the enumerated

elements, the scope of the claims is not limited to those elements and the inclusion of additional

structures or features not specified in a claim does not avoid infringement.

**52.**    An exemplary comparison of the Infringing Device with claim 4 of the '223

Patent is illustrated in the chart below

| Claim Language | Infringing Device (Partisan Disruptor) |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | The Infringing Device is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br> |

| | |
|---|---|
| | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br> |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins.<br><br> |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | The Infringing Device includes a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis between set and released positions. |

| | |
|---|---|
| |  |
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position; | The Infringing Device includes a trigger member with a sear and that is mounted in the housing to pivot on a transverse axis between set and released positions.<br><br><br><br>The trigger member has a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled.<br><br>The contact causes the trigger member to be forced to the set position. |
| a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger | The Infringing Device includes a locking bar that is pivotally mounted in the housing. |

| member can be moved by an external force to the released position. |  |
| --- | --- |
| | The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.<br><br>The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaches a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |

53.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device is direct infringement under 35 U.S.C. § 271(a).

54.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Device is a direct infringement of the '223 Patent.

55.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

56.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – DIRECT INFRINGEMENT OF THE '003 PATENT

57.     The allegations set forth in paragraphs 1-56 are fully incorporated into this

Second Count for Relief.

58.     Upon information and belief, Defendants have and continue to willfully directly

infringe at least Claim 4 of the '003 Patent by making, using, selling, offering for sale, and/or

importing without authority within the United States, the Infringing Device.

**59.**     An exemplary comparison of the Infringing Device with claim 4 of the '003

Patent is illustrated in the chart below:

| Claim Language | Infringing Device (Partisan Disruptor) |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Infringing Device is a firearm trigger mechanism. Firearm Systems describes the "Disruptor" as a "3 Position Drop-In Forced Reset Trigger" on its website. (https://firearmsystems.net/product/partisan-disruptor-ar15-frt-trigger/). |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Infringing Device includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.<br><br><br><br>The Infringing Device is sold with hammer and trigger pins. |

| | |
|---|---|
| |  |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Infringing Device includes a hammer that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.  |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, |  The Infringing Device includes a trigger member that has a sear and is mounted in the housing to pivot on the trigger member pin between set and released positions. The trigger member has a surface positioned to be contacted by a surface of said hammer during rearward pivoting of the |

| | |
|---|---|
| | hammer to cause the trigger member to be forced to the set position.<br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the hammer and trigger member set positions and are out of engagement in the hammer and trigger member released positions. |
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | <br>The Infringing Device includes a disconnector that has a hook for engaging the hammer and is mounted in the housing to pivot on the trigger member pin. |
| a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be | <br>The Infringing Device includes a locking member mounted in the housing to pivot on a transverse locking member pin. The locking member is |

| | |
|---|---|
| moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | pivotable between a first position at which it mechanically blocks the trigger member from moving to the released position and a second position at which it does not mechanically block the trigger member, allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and is moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Infringing Device includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions.<br><br> |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

| | |
|---|---|
| |  |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member. |

60. Accordingly, Defendants' sale and/or offer to sell the Infringing Device is direct infringement under 35 U.S.C. § 271(a).

61. Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Device is a direct infringement of the '003 Patent.

62. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

63. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III – DIRECT INFRINGEMENT OF THE '336 PATENT

64.    The allegations set forth in paragraphs 1-63 are fully incorporated into this Third Count for Relief.

65.    Upon information and belief, Defendants have and continue to willfully directly infringe at least Claim 3 of the '336 Patent by making, using, selling, offering for sale, and/or importing without authority within the United States, the Infringing Device.

**66.**    An exemplary comparison of the Infringing Device with claim 3 of the '336 Patent is illustrated in the chart below.

| Claim Language | Infringing Device (Partisan Disruptor) |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Infringing Device is firearm trigger mechanism. Firearm Systems describes the "Disruptor" as a "3 Position Drop-In Forced Reset Trigger" on its website. (https://firearmsystems.net/product/partisan-disruptor-ar15-frt-trigger/). |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | <br><br>The Infringing Device includes a housing that has first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.<br><br>The Infringing Devise is sold with hammer and trigger pins. |

<table>
<tr><td></td><td>

**Hammer and trigger pins**</td></tr>
<tr><td>a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,</td><td>

**Hammer**

The Infringing Device includes a hammer that has a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier</td></tr>
<tr><td>a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,</td><td>

**Trigger**

The Infringing Device includes a trigger member that has a sear and is mounted in the housing to pivot on the trigger member pin between set and released positions.</td></tr>
</table>

| | |
|---|---|
| |  The trigger member has a surface positioned to be contacted by a surface of the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member. |
| a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin, | The Infringing Device includes a disconnector that has a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin. |

a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and



The Infringing Device includes a locking member mounted in the housing to pivot on a transverse locking member pin. The locking member is pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.

a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook,



The Infringing Device includes a safety selector that is mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. The safety selector is configured such that, when said safety selector is in the forced reset semi-automatic position, it causes the disconnector to be

| | repositioned and in doing so prevents the disconnector hook from catching the hammer hook. |
|---|---|
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | When in the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When in the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position. The safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing the trigger member. |

67.    Accordingly, Defendant's sale and/or offer to sell the Infringing Device is direct infringement under 35 U.S.C. § 271(a).

68.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Device is a direct infringement of the '336 Patent.

69.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

70.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a

reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV – DIRECT INFRINGEMENT OF THE '807 PATENT

71.    The allegations set forth in paragraphs 1-70 are fully incorporated into this Fourth

Count for Relief.

72.    Upon information and belief, Defendants have and continue to willfully directly

infringe at least claim 1 of the '807 Patent by making, using, selling, offering for sale, and/or

importing without authority within the United States, the Infringing Device.

**73.**    An exemplary comparison of the Infringing Device with claim 1 of the '807

Patent is illustrated in the chart below

| Claim Language | Infringing Device (Partisan Disruptor) |
|---|---|
| 1. A firearm trigger mechanism comprising: | The Infringing Device is firearm trigger mechanism. Firearm Systems describes the "Disruptor" as a "3 Position Drop-In Forced Reset Trigger" on its website. (https://firearmsystems.net/product/partisan-disruptor-ar15-frt-trigger/). |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  The Infringing Device includes a hammer that has a sear catch and a hook and is mounted in housing that fits into a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions. The hammer pivots rearward by rearward movement of a bolt carrier. |

| | |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, |  The Infringing Device includes a trigger member that has a sear and is mounted in a housing that fits into a fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions.  The trigger member has a surface positioned to be contacted by a surface of said hammer during rearward pivoting of the hammer to cause said trigger member to be forced to the set position. |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member. |

| | |
|---|---|
| a disconnector having a hook for engaging said hammer hook and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | <br><br>The Infringing Device includes a disconnector that has a hook for engaging the hammer hook and is mounted in a housing that fits into the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, which it shares with the trigger member. |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | <br><br>The Infringing Device includes a locking member that is movably mounted in a housing that fits into the fire control mechanism pocket. The locking member is movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member, allowing said trigger member to be moved to the released position. The locking member is spring biased toward the first position and is moved against said spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

| | |
|---|---|
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | <br><br>The Infringing Device includes a safety selector that is movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions. |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release said trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set positions so that the user can pull the trigger member to fire the firearm. |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer, causing the trigger member to be forced to the set position, the safety selector prevents the disconnector hook from catching the hammer hook. Thereafter, when the bolt carrier reaches the substantially in-battery position, the user can pull the trigger member to fire the firearm without manually releasing said trigger member. |

74.     Accordingly, Defendants' sale and/or offer to sell the Infringing Device is direct infringement under 35 U.S.C. § 271(a).

75.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Device is a direct infringement of the '807 Patent.

76.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

77.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

<strong><u>COUNT V – FALSE PATENT MARKING</u></strong>

78.     The allegations set forth in paragraphs 1-77 are fully incorporated into this Fifth Count for Relief.

79.     On information and belief, Stakes the inventor and is an owner of U.S. Patent No. 9,146,067, which relates to a three-position assisted reset trigger made and sold by Tac-Con. On information and belief, Stakes is an owner of Tac-Con, whose rate-of-fire enhancing products precede Plaintiffs' creation of the market for forced reset triggers.

80.     The claims of U.S, Patent No. 9,146,067 do not cover a forced reset trigger.

81.     On information and belief, Defendants Stakes and John Doe (Partisan Triggers) know that the Partisan Triggers "Disruptor" is a forced reset trigger and that the claims of U.S, Patent No. 9,146,067 do not cover that product.

82.     Defendants Stakes and John Doe (Partisan Triggers) falsely promote the Disruptor as not being a forced reset trigger and that it is covered by claims of U.S. Patent No. 9,146,067.

COMPLAINT - 30 -

This falsely suggests to reseller customers and end user customers that the Partisan Disruptor is not covered by Plaintiffs' patent(s) deceiving those customers to believe they are not exposed to infringement liability.

83.     This assertion is false and is for the purpose of deceiving the public,

84.     Plaintiffs have suffered competitive injury as a result of a these false and deceptive statement and are entitled under 35 U.S.C. § 292 to recover damages adequate to compensate for the injury.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.     A judgment in favor of Plaintiffs that Defendants have infringed the '223 Patent;

b.     A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

c.     A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent, or other such equitable relief as the Court determines is warranted;

d.     A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the

'223 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

e.    A judgment in favor of Plaintiffs that Defendants have infringed the '003 Patent;

f.    A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '003 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

g.    A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '003 Patent, or other such equitable relief as the Court determines is warranted;

h.    A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '003 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

i.     A judgment in favor of Plaintiffs that Defendants have infringed the '336 Patent;

j.    A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '336 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

k.      A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '336 Patent, or other such equitable relief as the Court determines is warranted;

l.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '336 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

m.      A judgment in favor of Plaintiffs that Defendants have infringed the '807 Patent;

n.      A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '807 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

o.      A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '807 Patent, or other such equitable relief as the Court determines is warranted;

p.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the

'807 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement;

q.      A judgment in favor of Plaintiffs that Defendants Stakes and John Doe (Partisan Triggers) have violated 35 U.S.C. § 292;

r.      A preliminary injunction enjoining Defendants Stakes and John Doe (Partisan Triggers) and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from falsely promoting the Disruptor as not being a forced reset trigger and/or that it is covered by claims of U.S, Patent No. 9,146,067;

s.      A permanent injunction enjoining Defendants Stakes and John Doe (Partisan Triggers) and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from falsely promoting the Disruptor as not being a forced reset trigger and/or that it is covered by claims of U.S, Patent No. 9,146,067, or other such equitable relief as the Court determines is warranted;

t.      A judgment and order requiring Defendants to pay Plaintiffs damages adequate to compensate for the injury, their costs, expenses, and prejudgment and post-judgment interest they are entitled to under 35 U.S.C. § 292; and

**u.**      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: December 23, 2025

Respectfully submitted,

/Glenn D. Bellamy/
Glenn D. Bellamy (Ohio Bar No. 0070321)
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243

*Attorney for Plaintiffs*