# EXHIBIT A

BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re: Super Safety Patent Litigation

MDL No. 3176

THE PARTISAN NETWORK'S INTERESTED PARTY RESPONSE
TO MOTION TO TRANSFER FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407

Under J.P.M.L. Rule 6.2(e), Interested Parties Firearm Systems LLC; Cloak Industries, Inc.; WebCorp, Inc.; SGC, LLC; Hawkphin Sales, LLC; AR-TT, LLC; and, Peak Tactical, LLC (altogether, the "Partisan Network") submit this response to the Motion to Transfer for Coordinated or Consolidated Pretrial Proceedings Under 28 U.S.C. § 1407 ("Transfer Motion") (ECF No. 1) filed by Defendants 80Mills LLC d/b/a Tactical Titan Supply; Pearson Gardner; DNT LLC d/b/a Deez Nutz Tactical; Zach Morrow; Z3 Productions LLC d/b/a Z3 PRO; Harrison Gunworks LLC; Tyler Harrison; Hanes Tactical LLC; Damion Terrell Bennett; and Steven Thanh Nguyen d/b/a Polymer Pew (collectively, "Movants").

The Partisan Network does not oppose Movants' Transfer Motion. In fact, the Transfer Motion does not affect any litigation in which the Partisan Network has an interest. What the Partisan Network opposes is the attempt by Plaintiffs ABC IP, LLC and Rare Breed Triggers, Inc. (together, "Plaintiffs") to widen the Movant's proposed centralization to encompass cases about a different technology and different patents—and to do so in Texas (ECF Nos. 8, 8-1), where Plaintiffs are based yet where the Partisan Network lacks any connection.

## BACKGROUND

The Partisan Network makes and distributes the Disruptor, a patented[1] drop-in cassette trigger mechanism designed for the AR-15 firearm. It is an assisted reset trigger (a/k/a forced reset trigger), meaning, through a precise mechanical process, it pushes the trigger forward after each shot so the shooter can rapidly fire follow-up rounds once the trigger is reset without removing pressure by the trigger-finger. By contrast, Movants make or sell a product for the AR-15 called a Super Safety. A Super Safety is a cam and cam lever designed to replace an AR-15's safety selector; it doesn't replace the entire trigger mechanism like a drop-in cassette does.

Plaintiffs claim to own or license seven relevant patents: U.S. Patents 12,038,247 ("'247 Patent"), 7,398,723 ("'723 Patent"), 12,031,784 ("'784 Patent"); 10,514,223 ("'223 Patent"), 11,724,003 ("'003 Patent"), 12,036,336 ("'336 Patent"), and 12,274,807 ("'807 Patent"). Across six cases filed in June 2025, Plaintiffs sued each of the Movants for infringing the '247 Patent by selling the Super Safety. Four of those cases also asserted the '784 Patent; two asserted the '723 Patent. Only one of those six cases asserted the '223 Patent, '003 Patent, and '336 Patent. The common denominators were the '247 Patent and the Super Safety.

Movants filed the Transfer Motion to centralize the Super Safety cases. That same day, Plaintiffs began suing the Partisan Network's distributors for infringing the '223 Patent, '003 Patent, '336 Patent, and '807 Patent by selling the Disruptor:

- *Rare Breed Triggers Inc. et al. v. Firearm Systems LLC et al.*, No. 2:25-cv-04938 (D. Ariz., filed Dec. 23, 2025)

- *ABC IP, LLC et al. v. Cloak Industries, Inc. et al.*, No. 1:26-cv-00001 (D. Idaho, filed Jan. 5, 2026)

---

[1] U.S. Patent 9,146,067.

2

- *ABC IP, LLC et al. v. Hawkphin Sales, LLC et al.*, No. 4:26-cv-00015 (S.D. Iowa, filed Jan. 7, 2026)

- *ABC IP, LLC et al. v. SGC LLC et al.*, No. 2:26-cv-00085 (D. Ariz., filed Jan. 7, 2026)

- *ABC IP, LLC et al. v. WebCorp, Inc. et al.*, No. 4:26-cv-00018 (E.D. Mo., filed Jan. 7, 2026)[2]

- *ABC IP, LLC et al. v. AR-TT LLC et al.*, No. 2:26-cv-00014 (E.D. Wash., filed Jan. 13, 2026)

Most recently, Plaintiffs sued Peak Tactical, LLC, which markets the Disruptor, in the District of Wyoming for infringing those same four patents. *See ABC IP, LLC et al. v. Peak Tactical, LLC et al.*, No. 2:26-cv-00018 (D. Wyo., filed Jan. 15, 2026). (these seven cases hereafter referred to as the "Disruptor cases").

In their response (ECF No. 14) to the Transfer Motion, Plaintiffs agreed that the Super Safety cases should be centralized but asked the Panel to add the Disruptor cases—plus a half-dozen others—to the mix. Movants opposed this request in their reply (ECF No. 15).

## ARGUMENT

Plaintiffs want a favorable hometown forum to hear all infringement claims conceivably related to their seven claimed patents. But including the Disruptor cases is unwarranted because the Super Safety cases and Disruptor cases lack a common question of fact and because transfer would be inconvenient and inefficient. If the Panel believes that centralization is appropriate, it should handle centralization of Super Safety and Disruptor cases separately, with the Disruptor cases transferred to Wyoming, not Texas.

---

[2] The *Hawkphin* and *WebCorp* cases assert the '247 Patent and '784 Patent as well because they allege additional infringing products other than the Disruptor.

3

I.  **Centralizing *all* of Plaintiffs' cases in one district is inappropriate under 28 U.S.C. § 1407.**

Actions pending in different districts may be transferred to a single district only when (A) the cases involve "one or more common questions of fact," and (B) the Panel determines that transfers "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. Consolidating all Super Safety and Disruptor cases in one district satisfies neither criterion.

A.  **The Disruptor cases and Super Safety cases do not arise from common facts.**

Movants correctly identify the common factual question among the Super Safety cases: "one common patent [the '247 Patent] asserted against one accused product [the Super Safety]." Reply at 3; *cf. In re Pipe Flashing Pat. Litig.*, 713 F. Supp. 3d 1414, 1415 (J.P.M.L. 2024) (centralization warranted where "[t]he same two patents are involved in each action, and the complaint asserts at least one common accused product"). Likewise, Movants are right to point out that the Disruptor cases diverge from the Super Safety cases because none of the Disruptor cases concerns the '247 Patent. *See* Reply at 3. The Disruptor cases center on a different accused mechanism and different patent families with different claim elements and different infringement theories.

Although it is true that "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer," *In re Rembrandt Techs., LP*, 493 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007), here, there are *no* factual issues common to all cases except the Plaintiffs. Plaintiffs assert a mishmash of patents and allegedly infringing products, *see* Resp. at 10–12, and asks the Panel to infer commonality. This is unlike, e.g., *In re Pipe Flashing* where there was some overlap among all the cases. *Cf. In re Constellation Techs. LLC, Pat. Litig.*, 38 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014) (centralization inappropriate even

4

when one patent was common to all actions). Here, the Super Safety device is a safety-selector product; the Disruptor is a cassette-style trigger mechanism. The development, function, operation, materials, testing, and marketing for these products are different, and the parties and witnesses with relevant knowledge do not overlap. Document discovery, manufacturing records, expert analysis, and third-party testimony will be product specific. Even the fact that Plaintiffs' patents lack a common inventor counsels against certification. According to the USPTO, Plaintiffs' seven claimed patents were invented by four different people, with no commonality between the inventors of the patents central to the Super Safety cases—Brian Blakley (the '247 and '723 Patents) and Lawrence DeMonico (the '284 Patent)—and inventors of the patents alleged against the Disruptor—Jeffrey Rounds (the '223 Patent) and Mladen Thomas Strbac (the '003, '336, and '807 Patents). *See In re Constellation Techs.*, 38 F. Supp. 3d at 1393 (no centralization when the patents at issue "d[id] not descend from a common patent 'family' (*i.e.*, the patents have many different inventors)"). Nor is the inventor of the '067 Patent practiced by the Disruptor—Michael Stakes—common with any of the inventors in the Super Safety cases.

In sum, Plaintiffs have not shown "that there is enough commonality to make centralization necessary or even advantageous" for the Disruptor cases. *In re Charles R. Bobo Pat. Litig.*, 829 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011).

### B. Centralizing Disruptor cases with Super Safety cases would undermine convenience and efficiency and would create prejudice.

No one except for Plaintiffs would benefit from centralizing Disruptor cases with Super Safety cases. Merging these distinct types of actions would force a transferee court to learn multiple technologies and separate patent histories, run parallel *Markman* hearings on unrelated claims, and manage non-overlapping discovery. Because all the Disruptor cases concern the Partisan Network and its technology and will turn on the same issues, centralizing the Disruptor

5

cases in a separate MDL would be efficient and convenient for all the parties involved. By contrast, including the Disruptor cases with cases about the Super Safety, the expired '723 Patent, or the '247 or '784 Patents would serve only to multiply disputes and burden the Partisan Network with motion practice and discovery that are irrelevant to their cases. This is doubly so because claim construction is patent-specific. Few, if any, efficiency or convenience interests are served by consolidating the Super Safety cases with the Disruptor cases. Rather, the Partisan Network would benefit from a separate consolidated proceeding in a central Mountain West location and would be prejudiced by having to litigate in Texas. *See infra* Section II.

In short, combining these dissimilar cases would dilute any efficiencies that centralization aims to achieve and would neither serve the convenience of parties and witnesses nor promote the just and efficient conduct of the actions.

\* \* \*

If the Panel grants the Transfer Motion, it should limit centralization to Super Safety cases and exclude Disruptor cases.

**II.     Texas is the wrong venue for the Disruptor cases.**

If the Panel transfers the Disruptor cases along with the Super Safety cases, it should not make the Partisan Network litigate in Texas.

28 U.S.C. § 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017). That statute restricts plaintiffs' choice of venue to (1) "the judicial district where the defendant resides" or (2) "where the defendant has committed acts of infringement *and* has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). For prong one, a defendant resides in its state of incorporation. *TC Heartland*, 581 U.S. at 270. And for prong two,

a regular and established place of business has three requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). So, without a physical presence in the Eastern or Western Districts of Texas, a patent-infringement defendant cannot be haled into court there. Accordingly, Plaintiffs sued Peak Tactical, LLC in Wyoming because it is organized there, and each of the other member of the Partisan Network and the Movants in their home districts.

For all the debate about flight times, plane tickets, and Ohio versus Texas, Movants and Plaintiffs do not consider that the Disruptor cases are unique. None of the Disruptor cases are in Ohio or Texas; they are centered in the West and Midwest (Washington, Idaho, Wyoming, Arizona, Iowa, Missouri). Wyoming is the natural center for these states west of the Mississippi, and the home state of the owner of the '067 Patent and the supplier of the Disruptor. Mathematically, triangulating the midpoint for the five Disruptor distributor case venues places the center near Cheyenne, Wyoming[3]—where Plaintiffs sued Peak Tactical, LLC. Although Cheyenne is a small city, it is only 100 miles from Denver and a 90-minute drive or 60-minute flight from Denver International Airport. And the District of Wyoming ranks near the bottom of districts in the number of civil cases filed per year, meaning it has capacity to take on an MDL. *In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (noting the importance of judicial capacity to take on a complex case). This all supports making Wyoming the focal point of the Disruptor cases.

---

[3] Partisan calculated the midpoint among Spokane, WA; Boise, ID; Phoenix, AZ; Des Moines, IA; and St. Louis, MO, by averaging those cities' latitudes and longitudes. Plotting the resulting coordinates yields a spot on the Wyoming–Colorado border about 60 miles from Cheyenne.

Plaintiffs seek to circumvent Section 1400(b)'s protections by centralizing the Disruptor cases in a district foreign to the Partisan Network and its distributors. Effectively, Plaintiffs are trying to use MDL procedures to accomplish what *TC Heartland* has forbidden—forcing nonresident, nonconsenting defendants to defend cases in far-flung venues in the name of efficiency alone. It's no surprise that observers have criticized this practice.[4]

Indeed, Plaintiffs' two venue suggestions are no coincidence; they have chosen two districts that are both in their backyard and extremely popular with patent plaintiffs. For many years, the Eastern District of Texas was "a venue notorious for the opportunistic filing of patent infringement lawsuits." *HP Hood LLC v. Stremicks Heritage Foods LLC*, 2010 U.S. Dist. LEXIS 155479, at *13 (S.D. Cal. Mar. 9, 2010).[5] After *TC Heartland*, this district's influence waned, but it is still a desirable venue for plaintiffs. Then, the Western District of Texas, containing Austin and many tech companies, surpassed its eastern neighbor as the preeminent venue for patent plaintiffs.[6] This is because Judge Albright (whom Plaintiffs propose) is the only judge in his division, and plaintiffs filing in Waco were, until recently, guaranteed to draw him. In 2022, after congressional

---

[4] Adi Williams, Ricardo Bonilla & Aslesha Parchure, *Multidistrict Litigation in Patent Cases: A Run-Around on* TC Heartland*?*, IAM Media (Aug. 24, 2022), https://www.fr.com/uploads/2979-2022-08-24-article-iam-multidistrictlitigationinpatentcases-bonilla-williams.pdf.

[5] *See also* Julie Creswell, *So Small a Town, So Many Patent Suits*, N.Y. Times (Sept. 24, 2006), https://www.nytimes.com/2006/09/24/business/so-small-a-town-so-many-patent-suits.html; James Bessen, *Why Do Patent Trolls Love East Texas and Delaware? They Win More There.*, Wash. Post (Sept. 19, 2013), https://www.washingtonpost.com/news/the-switch/wp/2013/09/19/why-do-patent-trolls-love-east-texas-and-delaware-they-win-more-there/.

[6] J. Jonas Anderson & Paul R. Gugliuzza, *How the West Became the East: The Patent Litigation Explosion in the Western District of Texas*, PATENTLYO (Sept. 15, 2020), https://law.temple.edu/10q/how-the-west-became-the-east-the-patent-litigation-explosion-in-the-western-district-of-texas/; Stephen Paulsen, *The Rise and Fall of a Texas Patent Court*, Courthouse News (Oct. 28, 2022), https://www.courthousenews.com/the-rise-and-fall-of-a-texas-patent-court/.

inquiry, the Western District's Chief Judge ordered that patent cases filed in Waco be redistributed to other judges throughout the district.

Both the Eastern and Western Districts attracted plaintiffs because of their pro-trial, anti-transfer, anti-dismissal local rules and practice standards. *See supra* nn.3–4. Simply put, Plaintiffs ask for these cases to be transferred to Marshall or Waco because Plaintiffs perceive they will have the upper hand there. Plaintiffs want the Panel to put a thumb on the scale and return the parties to the "bad old days" of opportunistic forum shopping, contravening *TC Heartland* and the Western District's own reforms. The Panel should not countenance this tactic and should instead deny centralization of the Disruptor cases so the Partisan Network can seek centralization and transfer of their cases to the District of Wyoming.

## CONCLUSION

The Partisan Network respectfully requests that the Panel deny Plaintiffs' request for centralization of the Disruptor cases. The Partisan Network otherwise expresses no view on Movants' Transfer Motion.

Dated: January 30, 2026

HOLLAND & HART LLP

*s/ Paul D. Swanson*
Paul D. Swanson
555 17th Street, Suite 3200
Denver, CO 80202
(303) 295-8000
pdswanson@hollandhart.com

**Attorneys for the Partisan Network**

9

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2026, the foregoing document was filed via the U.S. Judicial Panel for Multidistrict Litigation's CM/ECF electronic filing system and a copy thereof was served via the CM/ECF upon all counsel of record.

*/s/ Paul D. Swanson*
Paul D. Swanson

36901333